UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
JIMMIE MECCYA WILLIAMS,

              Plaintiff,

vs.

TADD LAZARUS, M.D., P.C, ET Al. and
ST. CLARE'S HOSPITAL and HEALTH CENTER,

              Defendants.
-------------------------------------------------------------x

Action No. **05 CV 5909**

**DECLARATION OF RACHEL H. PORITZ, ESQ. IN OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE**

Rachel H. Poritz, Esq., an attorney duly admitted to practice before this Court, submits this declaration pursuant to 28 U.S.C §1746 and declares that the following is true and correct under the penalties of perjury:

1) I am an associate in the law firm of Silverson, Pareres & Lombardi, LLP attorneys for defendant, St. Clare's Hospital and Health Center, n/k/a St. Vincent's Midtown Hospital.

2) This declaration is respectfully submitted in opposition to plaintiff's Motion in Limine to exclude any reference to or evidence of plaintiff's criminal convictions and bad acts.

3) I have personal knowledge of the facts stated herein, and if called to testify as a witness, I could and would competently testify.

4) Attached hereto as EXHIBIT "A" is a true and correct copy of the Expert Report of Dr. Alexander McMeeking.

5) Attached hereto as EXHIBIT "B" is a true and correct copy of Defendant's Notice of Intent.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 27, 2007

                                                        /s/
                                      Rachel H. Poritz (RP-7320)

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JIMMIE MECCYA WILLIAMS,

                Plaintiff,

vs.

TADD LAZARUS, M.D., P.C, ET Al. and
ST. CLARE'S HOSPITAL and HEALTH CENTER,

                Defendants.
------------------------------------------------------------x

05 CV 5909 (HB)

## EXPERT REPORT OF ALEXANDER A. MCMEEKING, M.D.

SILVERSON, PARERES & LOMBARDI LLP

Victoria Lombardi, Esq. (VL-4722)
Rachel H. Poritz, Esq. (RP-7320)
300 East 42nd Street, 5th Fl.
New York, New York 10017
T. 212-557-1818
F. 212-557-1336

Attorneys for Defendant ST. CLARE'S HOSPITAL and HEALTH CENTER, n/k/a ST. VINCENT'S MIDTOWN HOSPITAL

# EXPERT REPORT OF ALEXANDER A. MCMEEKING, M.D.
# IN THE CASE WILLIAMS V. ST. CLARE'S HOSPITAL AND HEALTH CENTER

I. **BACKGROUND**

   A. **QUALIFICATIONS**

   1. I am a physician board certified in Internal Medicine and Infectious Diseases.

   2. Currently, I am an Attending Physician in Infectious Diseases at New York University/Bellevue Medical Center, a position I have held since 1987. From 1987 to 1989, I was the Director of the AIDS and Infectious Disease Clinic at Bellevue Hospital. I have been a Clinical Professor in Medicine at New York University/Bellevue Medical Center since 2002. From 1987 through 1994, I was an Instructor in Medicine at New York University/Bellevue Medical Center.

   3. I have been licensed to practice medicine in New York State since 1983. I graduated New Jersey Medical School with a medical degree in 1982. I completed an internship and residency at St. Luke's-Roosevelt Hospital Center in New York and completed a fellowship in Infectious Diseases in 1987.

   4. Following my position as the Director of the AIDS and Infectious Disease Clinic at Bellevue Hospital, I entered into private practice.

   5. My curriculum vitae is attached hereto as Exhibit A.

   B. **PRINCIPAL AREAS OF PRACTICE, RESEARCH AND TEACHING**

   6. My specialty area of research is antiretroviral medications and therapy for HIV and viral hepatitis. I am a member of the Pharmacy and Therapeutic Committee, Quality Assurance Committee, and Infection Control Committee at New York University Medical Center. In 2002, I was the Director of Clinical Virologic Research at New York University Medical Center. Since 2005, I have been a subinvestigator for the AIDS Clinical Trial Unit at New York University Medical Center.

   7. My research activities are documented in my curriculum vitae, attached hereto as Exhibit A.

   8. My teaching activities include my position as Clinical Professor in Medicine at New York University/Bellevue Medical Center. I teach medical residents, infectious disease specialty fellows, and medical students. I routinely lecture and provide information to members of the community through programs and organizations such as the HIV Arts Network. I am a Member of the Editorial Board of Clinical Infectious Diseases and The PRN Notebook of the Physicians Research Network.

## C. PUBLICATIONS

9. I have published numerous articles focusing on HIV and other infectious diseases. My curriculum vitae provides a list of my publications.

## D. PRIOR TESTIMONY

10. In the last four years, I have given testimony in two medical malpractice cases: <u>Antico v. LaRock MD</u>, Suffolk Superior Court, Massachusetts, Index No. 012937 and <u>Payne v. Pierangelo</u>, Hampden Superior Court, Massachusetts, Index No. 0300014.

## II. **PURPOSE AND SCOPE OF REPORT**

11. I have been retained by counsel for defendant St. Clare's Hospital and Health Center, n/k/a St. Vincent's Midtown Hospital to opine, within a reasonable degree of medical certainty, as to the care and treatment rendered to plaintiff Jimmie Meccya Williams in 1996 and 1997 in light of the applicable accepted standards of medical care. I have been asked to review all of the pertinent medical records and deposition testimony, including subsequent HIV testing performed on Mr. Williams. I have been asked to give my opinions, within a reasonable degree of medical certainty, about the care and treatment rendered to Mr. Williams in 1996 and 1997 and the plaintiff's allegations of negligence in this lawsuit. I have also been asked to review the report of plaintiff's expert Dr. Jay Dobkin and respond to the statements and opinions stated therein.

12. In preparing this report, I have reviewed the following documents:

   (a) Certified copy of the St. Clare's Hospital and Health Center medical records pertaining to Mr. Williams
   (b) PrimeCare Medical Inc. medical records pertaining to Mr. Williams
   (c) State of New York Department of Corrections (Franklin Correctional Facility) medical records pertaining to Mr. Williams
   (d) Huttonsville Correctional Center medical records pertaining to Mr. Williams
   (e) The results of the HIV testing performed on Mr. Williams in August 2006 at Southern Regional Jail
   (f) The Complaint in this action
   (g) Plaintiff's Answers and Objections to Defendant's Interrogatories
   (h) Expert Report of Jay F. Dobkin, M.D., dated February 6, 2007
   (i) Transcript of the deposition of Mr. Williams, dated November 17, 2006
   (j) Transcript of the deposition of Linda Kamal, M.D., dated December 13, 2006
   (k) Transcript of the deposition of Dawn Roehrig-Martinez, P.A., dated January 24, 2007
   (l) Transcript of the deposition of Diana McLaughlin, dated February 5, 2007

### III. STATEMENT AND DISCUSSION OF OPINIONS AND CONCLUSIONS

13. Based upon my review of the documents outlined in paragraph 12 above, my training and experience in the fields of Internal Medicine and Infectious Diseases, I have the following opinions, all of which are stated within a reasonable degree of medical certainty:

14. Based upon the most recent testing done in August 2006 at Southern Regional Jail, Mr. Williams is not HIV positive.

15. It is my opinion, based upon a review of the medical records and deposition transcripts, that Mr. Williams presented to the Spellman Clinic at St. Clare's and advised the medical practitioners that he was HIV positive. Mr. Williams advised the medical staff at St. Clare's of his date of diagnosis as HIV positive.

16. The standard of practice in 1996-97 (through today) is that a patient referred to a specialty clinic for HIV positive patients, such as the Spellman Clinic, is to check immune function with a CD4 cell count and to check viral activity with a viral load (PCR test). It is my opinion based upon my review of the materials stated above that the medical practitioners at St. Clare's acted in accordance with accepted standards of medical care by checking Mr. William's immune function with a CD4 cell count and viral activity with a PCR test.

17. Viral load testing (PCR) is the cornerstone of deciding whether and when to treat a patient with antiretroviral therapy and to measure the response to antiretroviral therapy. The following viral load results (performed by SmithKline Beecham) are documented in the St. Clare's chart:

| SmithKline Beecham Log-In Date | Result (copies per ml) |
| --- | --- |
| 11/14/96 (blood drawn on 11/12/96) | <400 |
| 11/19/96 | 34,927 |
| 12/17/96 | 91,588 |
| 1/14/97 | 22,663 |

18. The result of the 11/14/96 viral load study (blood drawn at the St. Clare's laboratory on 11/12/96) is consistent with an HIV negative individual. The results of the 11/19/99, 12/17/96, and 1/14/97 viral load studies are consistent with an HIV positive individual and are not consistent with an HIV negative individual. It is medically impossible for an HIV negative person to have the viral loads documented for 11/19/99, 12/17/96, and 1/14/97. Furthermore, the viral loads documented for 11/19/99, 12/17/96, and 1/14/97 are indicative of an individual with advanced HIV infection.

19. It is my opinion, based upon a review of the medical records and deposition transcripts, that Mr. Williams advised the staff at St. Clare's, particularly physician's assistant Dawn Roehrig-Martinez on 11/19/96, that he did not give blood for laboratory studies on 11/14/96 (blood drawn at the St. Clare's laboratory on 11/12/96).

20. It is my opinion that it was proper for PA Roehrig-Martinez to order viral load and CD4

4

testing on 11/19/96 based upon Mr. Williams statement that he did not give blood on 11/12/96 and the fact that a laboratory report of blood drawn on 11/12/96 (SmithKline Beecham Log-In Date 11/14/96) was consistent with an HIV negative individual and contradicted the patient's medical history of HIV positive diagnosis.

21. PA Roehrig-Martinez properly noted a great difference between the two viral load studies and ordered a repeat viral load test on 12/13/96. I disagree with Dr. Dobkin's opinion that inconsistent laboratory studies were not reviewed with the patient. It is my opinion that PA Roehrig-Martinez appropriately noted inconsistent laboratory results in the chart, discussed this with plaintiff (who advised that he did not give blood on 11/12/96), took appropriate steps with respect to the inconsistencies, and ordered appropriate testing to resolve any inconsistency. The staff at St. Clare's acted in accordance with accepted standards of medical care and ordered appropriate testing prior to discussing antiretroviral therapy with Mr. Williams and prescribing antiretroviral medications.

22. It is my opinion that the staff at St. Clare's appropriately discussed antiretroviral medications with Mr. Williams before they were prescribed, in accordance with accepted standards of medical care. The St. Clare's medical records document that antiretroviral medications were discussed at length with Mr. Williams and that Mr. Williams was given an opportunity to decide whether to commence antiretroviral therapy.

23. Based upon the viral load testing and CD4 cell count on 11/19/96 (reports dated 11/20/96 and 11/25/96) and viral load testing on 12/17/96 (report dated 12/23/96), it was appropriate for the medical providers at St. Clare's to commence antiretroviral treatment and there was no need to report or order ELISA and Western Blot HIV testing.

24. There are no guidelines that require a practitioner to repeat an HIV test (ELISA and Western Blot) prior to further evaluation of CD4 cell count and viral load (PCR test).

25. Only someone who is HIV positive can have a detectable viral load (PCR greater than 400 copies per ml).

26. As long as T-cells (CD4 count) and viral loads are tested, there is no need to have written confirmation of a HIV test (ELISA or Western Blot) because only HIV infection causes detectable HIV viral loads. The results of the CD4 and viral load testing done on 11/19/96 and 12/17/96 were consistent with an HIV positive individual (person infected with HIV) and are inconsistent with an HIV negative individual.

27. The viral load of an HIV infected person can have variation of many thousands of copies in the blood stream on a day to day basis. In an individual who takes HIV medications, a decreased in viral load over a month period is expected. Viral loads and response to HIV medications varies from patient to patient.

28. It is my opinion that the first blood drawn (collection date 11/12/96) showed results consistent with an HIV negative person (CD4 count 975 and PCR <400 copies per ml), is probably the only blood drawn that was actually the blood of Mr. Williams. It is my opinion that the blood

samples drawn on 11/19/99, 12/17/96, and 1/14/97 are of someone other than Mr. Williams.

29. I disagree with Dr. Dobkin's opinion stated in his report that the only plausible explanation for the three positive viral load results is that they were mixed up with the samples for another patient. This is not the only plausible explanation and in fact there are more plausible and likely explanations, as stated herein in my opinion and report.

30. Laboratories in New York City and New York State are certified by the Department of Health. In a certified laboratory such as St. Clare's Hospital and Health Center, it is highly unlikely and highly implausible that blood samples would be mixed up on three separate occasions for the same patient. It is my opinion that it is much more likely and plausible that someone else had their blood drawn with Mr. Williams' laboratory slip at the laboratory at St. Clare's. Logically, it is more plausible that Mr. Williams had someone he knew to be HIV positive take his laboratory slip to the laboratory and have blood drawn under his name, versus the possibility of three laboratory errors for the same patient within 3 months time (11/96 to 1/97).

31. With respect to Dr. Dobkin's discussion of false positive results, it is my opinion that the viral loads documented for 11/19/99, 12/17/96, and 1/14/97 are not consistent with values that can be considered false positives.

32. Documented in the St. Clare's chart is a CD4 cell count of 975 for blood drawn on 11/12/96 and a CD4 cell count of 324 for blood drawn done on 11/19/96. A CD4 count below 600 is abnormal. It is my opinion that the blood drawn on 11/12/96 and 11/19/96 for the CD4 testing cannot be from the same person. The 11/12/96 result is consistent with an individual who is HIV negative.

33. It is my opinion that someone other than Mr. Williams, someone who is HIV positive, had blood drawn with Mr. Williams' laboratory slip on 11/19/96 (as well as on 12/17/96, and 1/14/97 as stated herein). It is my opinion that the most plausible and most likely scenario is that Mr. Williams gave someone else his laboratory slip, someone he knew to be HIV positive, to go to the laboratory and have blood drawn for Mr. Williams. As stated above, I disagree with Dr. Dobkin's opinion that there was a laboratory error by St. Clare's with respect to the drawing of Mr. Williams' blood.

34. I also disagree with Dr. Dobkin's opinion that the staff of St. Clare's did not discuss inconsistent or unusual variation in laboratory studies with Mr. Williams. The medical records document that PA Dawn Roehrig-Martinez specifically discussed this matter with Mr. Williams, who advised that he did not give blood on 11/12/96. As stated above, the medical staff at St. Clare's appropriately noted inconsistent laboratory results in the chart, discussed this with plaintiff, took appropriate steps with respect to the inconsistencies, and ordered appropriate testing to resolve any inconsistency.

35. It is my opinion based upon my professional experience treating HIV positive patients and working at Bellevue Hospital and NYU Medical Center, that in 1996/97 (and prior and subsequent to that time) patients who were prescribed antiretroviral medications were discovered to be selling their antiretroviral medications. The street value of a month's supply of AZT was over

6

$1,000 in 1996/97. I have had patients admit to me that they did not take the antiretroviral medications prescribed to them and that they sold the medications. I have not seen any definitive evidence that Mr. Williams actually ingested the antiretroviral medications prescribed to him.

36. It is my opinion, based upon my professional experience working with a similar patient population as to that of the Spellman Clinic at St. Clare's, that committing medical fraud was a common practice among patients and that there were incentives to do so. HIV positive individuals receive numerous benefits from the city, state and federal government due to the fact that they are HIV positive; this was true in 1996/97. These benefits include, but are not limited to, free prescription medications, housing considerations and benefits, free health care and medical benefits through Medicaid, and free health care at specialty HIV/AIDS clinics such as Spellman Clinic at St. Clare's. The St. Clare's medical records document that plaintiff received medical and housing benefits and assistance with obtaining benefits through the Spellman Clinic.

37. It is my opinion that the fact that plaintiff is known to be HIV negative and there are three separate laboratory studies attributed to him for which the blood is from someone who is HIV positive is consistent with a situation of fraud in connection with his medical care and the claims in this case.

38. It is my opinion that following the prescription of antiretroviral medications and the start date of treatment, the medical providers at St. Clare's appropriately monitored Mr. Williams within accepted standards of medical practice. Antiretroviral therapy commenced 12/23/96. Viral loads were appropriately rechecked on 1/14/97, approximately one month after commencement of treatment, which is within accepted standards of medical practice. In accordance with accepted standards, subsequent laboratory studies would be ordered every three or four months thereafter, at the discretion of the medical provider as to the exact date of testing. Following 1/14/97, Mr. Williams did not attend scheduled clinic visits and this interfered with his medical care. Due to his non-adherence to scheduled visits and the recommendations of his medical providers to return for clinic visits and testing, his medical providers were unable to properly evaluate Mr. Williams and order testing, including viral load and CD4 count. It was appropriate for the staff at St. Clare's on 4/1/97 to schedule an appointment for Mr. Williams to be evaluated by a physician or physician's assistant for evaluation, but plaintiff failed to appear for that visit.

39. With respect to the side effects reported by Mr. Williams and claimed in this lawsuit, side effects that are known to be consistent with the HIV medications that plaintiff was prescribed (AZT, Epivir and Invirase) include nausea, vomiting, abdominal pain and headache. However, certain injuries claimed by plaintiff as resulting from the allegations in this case are inconsistent with the known and common side effects of antiretroviral medications. Joint pain is unusual and highly unlikely to be associated with AZT, Epivir or Invirase. Liver damage is unlikely to be associated with AZT, Epivir or Invirase, and is more likely to be associated with plaintiff's Hepatitis C; the medical records document that plaintiff had a liver condition and liver biopsy prior to the time he came to St. Clare's in November 1996. Claims of loss of use of an arm and loss of feeling in extremities are not common side effects associated with AZT, Epivir or Invirase, and there is no evidence in this case that there was a causal relationship. Hemorrhoids and constipation are not side effects of AZT, Epivir or Invirase, and the medical records document a prior history of chronic constipation, which is more likely the cause of any alleged hemorrhoids.

40. Mr. Williams testified at his deposition that he no longer suffers from his claimed side effects, as they have resolved. Side effects caused by or associated with antiretroviral medications invariably resolve within several weeks of stopping treatment. Only individuals who take antiretroviral medications can have side effects caused by antiretroviral medications.

41. With respect to Mr. Williams' belief that he was HIV positive until he received testing in 2004 and the ensuing claimed damages, it is my opinion that if Mr. Williams was so concerned about what he thought to be his HIV positive status, he would have sought medical treatment and antiretroviral treatment after he left St. Clare's and/or he would have advised the medical personnel at Huttonsville Correctional Center and/or Southern Regional Jail, where he was incarcerated after his treatment at St. Clare's. According to the medical records, Mr. Williams did not seek care for HIV following the time he stopped coming to St. Clare's. There were many times and situations when he received medical care in prison settings and there is no mention of an HIV positive diagnosis.

42. Mr. Williams testified at his deposition that he stopped taking antiretroviral medications in 1997. It is my opinion that the fact that he stopped taking antiretroviral medications (if he ever took them) indicates that he knew he was not HIV positive or did not care about his health and life expectancy.

43. There is nothing in the medical records to suggest that plaintiff suffered emotional trauma as a result of his belief that he was HIV positive. The medical records document a long history of depression, mental illness, drug use, family problems, criminal behavior, and incarceration in prison. It is my opinion that these factors were the cause and substantial contributing factors of Mr. Williams' claimed depression and emotional trauma. There is no evidence of any long-term emotional harm. There is no evidence that plaintiff followed-up with his medical care and in my opinion this demonstrates a lack of concern about his health, or that he knew he was not HIV positive.

44. It is my opinion within a reasonable degree of medical certainty that the damages and injuries alleged by Mr. Williams are not the result of any negligence, malpractice or wrongdoing by any medical practitioner or staff member of St. Clare's.

45. It is my opinion that Mr. Williams' credibility is at issue, as the records and PA Roehrig-Martinez document that Mr. Williams came to St. Clare's reporting that he was HIV positive with a diagnosis in October 1996. The Spellman Clinic at St. Clare's, where plaintiff received treatment, is a clinic that only treats HIV positive and AIDS patients. However, Mr. Williams claims that the staff at St. Clare's diagnosed him as HIV positive.

46. It is my opinion that Dr. Dobkin's opinions, as stated in his report are of limited value.

## CONCLUSIONS

47. It is my opinion within a reasonable degree of medical certainty that St. Clare's acted appropriately and in accordance with accepted standards of medical care with respect to the care and treatment rendered to Mr. Williams. It is also my opinion within a reasonable degree of medical certainty that plaintiff's claimed emotional trauma and physical side effects were not caused by any negligence or wrongdoing by St. Clare's. Contrary to the conclusions of Dr. Jay Dobkin, there is no evidence of any mishandling of specimens or laboratory error that contributed to any confusion or mismanagement of Mr. Williams care and treatment. It is my opinion that Mr. Williams' medical care and treatment was appropriately managed under the circumstances.

48. The opinions stated in this report are my own and represent my complete professional opinion based upon the materials reviewed as stated herein. All of the opinions stated herein are stated within a reasonable degree of medical certainty and all of the facts stated herein are true and within my knowledge based upon my education, training, professional experience, and review of the materials in this case.

Dated: February 22, 2007
New York, NY

_____
ALEXANDER A. MCMEEKING, M.D.

9

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JIMMIE MECCYA WILLIAMS,

                                                                            **05 CV 5909 (HB) (DFE)**

                Plaintiff,

vs.                                                              **NOTICE OF INTENT**

TADD LAZARUS, M.D., P.C, ET Al. and
ST. CLARE'S HOSPITAL and HEALTH CENTER,

                Defendants.
------------------------------------------------------------x

      PLEASE TAKE NOTICE, pursuant to Federal Rule of Evidence 609(b) that Defendant ST. CLARE'S HOSPITAL and HEALTH CENTER, n/k/a ST. VINCENT'S MIDTOWN HOSPITAL intends to introduce at the trial of this action evidence of plaintiff's criminal convictions, including the 1993 Welfare Fraud conviction and 1999 conviction for abduction and sexual assault, and evidence of plaintiff's "bad acts". These convictions and "bad acts" are those addressed in plaintiff's Motion in Limine.

Dated: New York, New York
February 28, 2007

                                              SILVERSON, PARERES & LOMBARDI LLP

                                              BY: _____
                                              Victoria Lombardi, Esq. (VL-4722)
                                              Rachel H. Poritz, Esq. (RP-7320)
                                              300 East 42nd Street, 5th Fl.
                                              New York, New York 10017
                                              212-557-1818

                                              Attorneys for Defendant **ST. CLARE'S HOSPITAL
                                              and HEALTH CENTER, n/k/a ST. VINCENT'S
                                              MIDTOWN HOSPITAL**

AFFIDAVIT OF SERVICE BY MAIL

STATE OF NEW YORK   }
                    ss:
COUNTY OF NEW YORK  }

Rachel H. Poritz, being duly sworn, deposes and says: deponent is not a party to the action, is over 18 years of age and resides in Brooklyn, New York.

On February 26, 2007 deponent served the within NOTICE OF INTENT via electronic email delivery and FEDERAL EXPRESS OVERNIGHT MAIL to the attorney for plaintiff:

TO:  Joshua R. Geller, Esq.
     Simpson Thacher & Bartlett LLP
     425 Lexington Avenue
     New York, NY  10017-3954
     212-455-2000

_____
Rachel H. Poritz

Sworn to before me this
26th day of February, 2007.

_____
Notary Public

SCHIETZELT JEFFREY J
NOTARY PUBLIC, STATE OF NEW YORK
NO. 02SC60096836
QUALIFIED IN ROCKLAND COUNTY
COMM EXP. 08/11/2007

*Index No.* 05 CV 5909 (HB) (DFE) *Year* 20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JIMMIE MECCYA WILLIAMS,

                      Plaintiff,

     -against-

TADD LAZARUS, M.D., P.C., et al. and
ST. CLARE'S HOSPITAL AND HEALTH CENTER

                 Defendants.

### NOTICE OF INTENT

### SILVERSON, PARERES & LOMBARDI LLP

*Attorneys for* Defendant, ST. CLARE'S HOSPITAL and HEALTH CENTER
n/k/a ST. VINCENT'S MIDTOWN HOSPITAL
300 EAST 42ND STREET
NEW YORK, NEW YORK 10017
(212) 557-1818

*Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed document are not frivolous.*

*Dated:*.....................................    Signature.................................................................................................................

                                          Print Signer's Name...........................................................................................

*Service of a copy of the within*                                                  *is hereby admitted.*

*Dated:*

                                                             *Attorney(s) for*

*PLEASE TAKE NOTICE*

☐ NOTICE OF ENTRY    that the within is a (certified) true copy of a
entered in the office of the clerk of the within named Court on       20

☐ NOTICE OF SETTLEMENT    that an Order of which the within is a true copy will be presented for settlement to the
Hon.                             one of the judges of the within named Court,
at
on                      20     , at              M.

*Check Applicable Box*

*Dated:*                                              **SILVERSON, PARERES & LOMBARDI LLP**
                                    *Attorneys for*

                                                                300 EAST 42ND STREET
                                                                NEW YORK, NEW YORK 10017
                                                                   (212) 557-1818

*To:*